**G. Daniel WALKER, Plaintiff–Appellant,**

v.

**Thomas F. PAGE, et al., Defendants–Appellees.**

No. 00–3990.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 28, 2003.

Decided March 11, 2003.

Before BAUER, ROVNER, and EVANS, Circuit Judges.

## ORDER

G. Daniel Walker contends in this action under 42 U.S.C. § 1983 that five Illinois prison officials violated his constitutional rights by failing to ship over 2,800 pounds of property, which includes some legal materials, to a California prison where he is presently in custody. The district court dismissed the suit without prejudice under Federal Rule of Civil Procedure 12(b)(6), concluding that Walker had failed to exhaust his administrative remedies, 42 U.S.C. § 1997e(a). Because the defendants have abandoned their reliance on the exhaustion ground—which cannot be resolved on the present record in any event—we modify the judgment to reflect a dismissal with prejudice and affirm on the alternative ground of res judicata.

In 1969 Walker shot an Illinois state trooper in the head after a traffic stop. He was convicted of attempted murder and aggravated battery and sentenced to lengthy prison terms. *People ex rel. Walker v. Pate*, 53 Ill.2d 485, 292 N.E.2d 387, 390–99 (1973) (upholding the attempted murder conviction but reversing the aggravated battery conviction). Four years later, Walker escaped and fled to California, where he committed a murder that resulted in a life sentence. *U.S. ex rel. Walker v. Director*, No. 92 C 1423, 1993 WL 62986, at *1 (N.D.Ill. Mar. 3, 1993). Walker remained incarcerated in California continuously for almost two decades; then in 1992 he was returned to Illinois. According to Walker, he was returned to complete the sentence imposed prior to his escape.

When Walker returned, he arranged to bring along 99 boxes of his property, which together weighed over 2,800 pounds. The

property included food, clothing, office supplies, computer equipment, a typewriter, legal materials, and other items. In late 1997, Walker says, he was told that he soon would be paroled on his Illinois sentence and returned to California, so he made preparations to take his property with him. Walker first filed a grievance demanding an opportunity to inventory and pack the property, which was being held in storage. The grievance was denied as moot after Walker was given an opportunity to inventory his property, at which time he declined to take anything out of storage except one box of personal hygiene items. Walker then packed 80 of his 99 boxes (the record does not reflect why he packed that particular number, though the defendants suggested in the district court that less than 99 of the boxes were even received in Illinois). Walker labeled the packed boxes with his new California prison address, wrote a memo captioned "property authorization" that instructed Illinois officials to send all 99 boxes to California, and provided the officials with $286.53 for shipping. Walker does not allege that $286.53 was enough to cover the shipping charges. It instead appears that he simply left officials the balance in his inmate account, $86.53, plus the $200 "parole check" that inmates receive upon release.

Walker's boxes never followed him to California–for reasons that are not entirely clear. In a memorandum dated more than five weeks before Walker's scheduled release, Illinois prison official Michael Nesbitt told Walker that the boxes could not be sent because the California prison system had scaled back inmates' personal property privileges and no longer warehoused inmates' property. Accordingly, Nesbitt instructed Walker to arrange to have the boxes stored with family or friends at his own expense. In contrast, another Illinois official, defendant Glenn Barton, responded to Walker's interroga-

tories by stating that after Walker's release he had placed the boxes, which were deteriorating, in new boxes appropriate for mailing, labeled the new boxes, and processed them for shipment. But according to Barton, the boxes were never sent because Walker had not supplied enough money to cover the shipping costs or provided alternative directions for disposing of the property.

After learning that the property had not been sent, Walker made several complaints. He petitioned California officials to compel the Illinois Department of Corrections to ship the property but was told that they had no control over an out-of-state agency. Walker also wrote to defendant Thomas Page, the warden at his former Illinois prison, reminding him of the property authorization form and demanding to know why the boxes had not been sent. In response, Walker received a letter explaining that California officials had advised the Illinois Department of Corrections not to ship the boxes. Along with the letter Walker also received a copy of Nesbitt's memo instructing him not to try shipping the property. According to Walker, this was the first time that he had seen the memo.

Walker then turned to the courts. In November 1998 he brought a mandamus action in Illinois state court against the five defendants named in this case (and one other official) to compel them to inventory and ship the 99 boxes. See Walker v. Page, No. 5–99–0270 (Ill.App.Ct. Mar. 21, 2000) (unpublished order). The circuit court dismissed the petition, and the appellate court affirmed, concluding that Walker had not exhausted his administrative remedies in Illinois and that relief was unavailable because the defendants had no duty to send the boxes. Walker also filed a federal-court action in the Central District of California, claiming in part that Califor-

nia and Illinois officials—including Warden Page—had violated his First Amendment right of access to the courts. The California district court dismissed the complaint without service upon the defendants, but the Ninth Circuit recently remanded the case for further proceedings on Walker's access-to-the-courts claim. *Walker v. Clark*, No. 01–57112, 2002 WL 31802826, at *2, 53 Fed.Appx. 804 (9th Cir. Dec. 10, 2002) (unpublished order).

Meanwhile in September 1999, as Walker continued to litigate in the Illinois state courts and in California, he also filed this suit in the Southern District of Illinois. In his complaint Walker alleges that the defendants improperly withheld his property and that without the legal materials contained in his boxes he had "been denied access to U.S. Court of Appeals, U.S. District Court, and California Superior Courts and defaulted in nine (9) pending actions." As relief, Walker seeks an affirmative injunction commanding the defendants to inventory and ship his property, plus $225 in damages for every day that the property has remained in Illinois. Upon the defendants' motion, a magistrate judge recommended dismissing the complaint on the ground that Walker had not exhausted his administrative remedies in Illinois, and the district court adopted the report and recommendation over Walker's objections. Walker then unsuccessfully sought reconsideration, and after he appealed pro se, we appointed counsel to brief and argue the case on his behalf.

On appeal Walker first challenges the district court's conclusion that he failed to exhaust his administrative remedies in Illinois. Under the Prison Litigation Reform Act, inmates need to exhaust only *available* administrative remedies. *E.g., Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir.2002); *Brown v. Croak*, 312 F.3d 109, 112–13 (3d Cir.2002); *Miller v. Nor-*

ris, 247 F.3d 736, 740 (8th Cir.2001). In dismissing Walker's suit the district court assumed that remedies were available after Walker learned that his property would not be shipped to California. But Walker has consistently maintained that he had no idea that his boxes would not be shipped until *after* he arrived in California. And once in California it is doubtful that he could avail himself of administrative remedies in Illinois. Those remedies are expressly made applicable "to committed persons assigned to correctional facilities within the Department of Corrections," 20 Ill. Admin. Code § 504.800, and there is no reason to think that while in California Walker remains "assigned" to an Illinois prison. (Assuming that Walker has completed his Illinois sentence, he certainly is no longer under the department's control.) So the current record does not establish the defendants' exhaustion defense—a point that the defendants effectively concede by failing to argue in their appellate brief that Walker did not exhaust his administrative remedies.

Because the district court's resolution of the exhaustion issue is not sustainable, Walker's second argument on appeal is superfluous. He maintains that the district court converted the defendants' motion to dismiss into a motion for summary judgment without giving him proper notice. *Green v. Benden*, 281 F.3d 661, 665 (7th Cir.2002); *Covington v. Ill. Sec. Serv., Inc.*, 269 F.3d 863, 865 (7th Cir.2001); Fed. R.Civ.P. 12(c). Walker is right that the court considered in support of the defendants' exhaustion argument an affidavit from Jim Simmons, who attested that Walker had not filed any grievances with Illinois' highest administrative body. But given that it is unclear if Walker needed to utilize the administrative process in the first place, the court's reference to Simmons's affidavit makes no difference. *E.g.,*

*Loeb Indus., Inc. v. Sumitomo Corp.,* 306 F.3d 469, 479–80 (7th Cir.2002) (subjecting an improper conversion of a Rule 12(b)(6) motion to harmless-error analysis).

■ Although the defendants at present cannot prevail on the exhaustion issue, they offer an alternative ground—res judicata—that does provide a basis for affirming. In 1998 Walker sued the same five defendants named in this action in Illinois state court, demanding a writ of mandamus that would compel them to ship his 99 boxes of property to California. His petition was dismissed, and the state appellate court affirmed, concluding in part that the defendants had no obligation to send the boxes. *Walker v. Page,* No. 5–99–0270. This judgment is entitled to the same preclusive effect in federal court as it would receive in Illinois' courts, which would treat the denial of the mandamus petition as a final judgment on the merits. *See Charles Koen & Assocs. v. City of Cairo,* 909 F.2d 992, 996–99 (7th Cir.1990); *Wozniak v. County of DuPage,* 845 F.2d 677, 681 (7th Cir.1988). Given that Walker's current case also involves the same parties and series of events that he litigated in his mandamus action, res judicata precludes this subsequent action. *See Nowak v. St. Rita High School,* 197 Ill.2d 381, 258 Ill. Dec. 782, 757 N.E.2d 471, 477 (2001) (listing the elements of res judicata).

Walker tellingly responds with no argument about the merits of the defendants' res judicata defense. Instead, he observes only that the defendants failed to raise the defense in their motion to dismiss and insists that it is too late for them to do so now. But although Walker is right that ordinarily we will not consider an unpreserved ground for affirming, such as res judicata, *e.g., Rizzo v. Sheahan,* 266 F.3d 705, 714 (7th Cir.2001), we do have discretion to consider the argument—for example where the proper resolution is beyond doubt, *Singleton v. Wulff,* 428 U.S. 106, 120–21, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976). Indeed, we may consider the question solely on our own initiative, *Arizona v. California,* 530 U.S. 392, 412–13, 120 S.Ct. 2304, 147 L.Ed.2d 374 (2000), if it is plain from the complaint and other papers on file that res judicata renders the case frivolous, *Gleash v. Yuswak,* 308 F.3d 758, 760–61 (7th Cir.2002); *see also Kratville v. Runyon,* 90 F.3d 195, 198 (7th Cir.1996); *Jackson v. N. Bank Towing Corp.,* 213 F.3d 885, 889–90 (5th Cir.2000). Here no theory appears or is suggested by Walker or his appointed lawyer under which he could avoid the preclusive effect of the Illinois judgment. So we resolve the case on that basis.

This resolution readily distinguishes this case from Walker's ongoing litigation in California. Although the Ninth Circuit recently concluded that Walker's California suit was improperly dismissed under 28 U.S.C. § 1915A because his complaint stated an access-to-the courts claim, *Walker v. Clark,* 2002 WL 31802826, at *2, we are not sure whether Walker's allegations in that case are the same as in this case. And in any event the Ninth Circuit's decision does not address the preclusive effect of Walker's earlier Illinois mandamus action. Indeed, it does not appear that the defendants in the Ninth Circuit's case (who include Warden Page) even had an opportunity to participate in that case and raise the defense.

Accordingly, the judgment is modified to reflect dismissal with prejudice, and as modified the judgment is affirmed. Because Walker's case is squarely barred by res judicata, under the PLRA he earns a "strike" for bringing the action. *See* 28 U.S.C. § 1915(g). But because the district court dismissed the case on an erroneous ground, Walker does not earn a strike for

taking this appeal. *Gleash,* 308 F.3d at 762.

MODIFIED and AFFIRMED.